## COUNTIES—MUNICIPAL CORPORATIONS—PRISONS AND RE= FORMATORIES.

[Cuyahoga (8th) Circuit Court, November 6, 1907.]

Winch, Henry and Marvin, JJ.

CLEVELAND (CITY) v. CUYAHOGA CO. (COMRS.).

REVISED STATUTES 2099 (LAN. 3430; B. 1536-369) NOW GOVERNS COST OF MAIN-
TAINING WORKHOUSE PRISONERS.

A city cannot recover from the county in which it is located the agreed price for the maintenance in the city workhouse of prisoners committed thereto by magistrates' or police courts for the violation of state statutes, as was previously the case under Sec. 2104 Rev. Stat.; but the apportionment of the expense of maintaining prisoners violating state statutes and municipal ordinances is now governed by Rev. Stat. 2099 (Lan. 3430; B. 1536-369), and the possibility of an over-lapping of benefits or expenses

as between the taxpayers of a city and the taxpayers of outlying munici-
palities and townships in the same county is so trifling that the maxim
*de minimus non curat lex* is applicable.

[Syllabus approved by the court.]

ERROR to Cuyahoga common pleas court.

**N. D. Baker,** city solicitor, for plaintiff in error.

**J. L. Cannon,** for defendant in error.

## HENRY, J.

The sole question involved in this proceeding in error is the suffi-
ciency of the petition. The action below was brought by the city to
recover from the county the agreed price for maintenance in the city
workhouse of prisoners committed thereto for violation of state stat-
utes. The theory of the city is that the county is ultimately liable for
such maintenance in all cases where the offense is statutory, and that
the city's ultimate liability for such maintenance is confined to cases
of violations of city ordinances. The petition alleges four causes of
action differentiated according to the committing tribunals, viz.: the
Cuyahoga common pleas court, justices of the peace throughout the
county, the mayor of Berea, and the Cleveland police court.

The correctness of the city's claim as to the first cause of action is
substantially conceded, except that the contract price was not lawfully
agreed upon between the parties in compliance with Rev. Stat. 3821b
(Lan. 6151), in that the county auditor made no proper certificate as
to the funds in the treasury.

This contention is, we think, without merit in view of the petition's
averment that the contract was "duly" made, and also because the lia-
bility asserted is not essentially contractual, but is derived rather from
the mandatory requirements of Rev. Stat. 2099 (Lan. 3430; B. 1536-
369).

The agreement as to the forty cents *per diem* price for maintain-
ing each prisoner should, under the allegations of the petition, and in
the absence of any averment to the contrary, be treated as an accord,
respecting the actual cost of such compulsory maintenance.

So far, therefore, as the first cause of action is concerned, the judg-
ment of the court of common pleas is affirmed.

Respecting the remaining three causes of action, Sec. 2104 Rev.
Stat., repealed when the municipal code (96 O. L. 96) was enacted in
October, 1902, would, were it still in force, have settled the whole con-
troversy favorably to the city's contentions. And the city contends
that the policy of the state, as reflected in past legislation and in the

Cleveland v. Commissioners.

manifest equity of the matter, is still such that counties are the ap-pointed agencies, constituted by the state, for maintaining those incarcerated in local penal institutions, for violation of its general laws, but that municipal corporations are made chargeable only with the maintenance of those incarcerated for violation of their own ordinances. Various analogies of other expenses thus apportioned between counties and municipalities are cited in support of this contention.

Revised Statutes 2099 (Lan. 3430; B. 1536-369), is the municipal code provision now applying to this subject, and it seems to be both explicit and comprehensive, so as to exclude the interpolation of any supposed but unexpressed policy of the state regarding the distribution of expense of maintaining these two classes of prisoners. It reads:

"When a person over sixteen years of age is convicted of an offense, under the law of the state or an ordinance of a municipal corporation, and the tribunal before which the conviction is had is directed by law to commit the offender to the county jail or corporation prison, the court, mayor, or justice of the peace, as the case may be, shall sentence the offender to the workhouse, if there is such house in the county; provided, that when a commitment is made from a city, village, or township in the county, other than in the municipality containing such workhouse, the council of such city or village, or the trustees of such township, shall transmit with the mittimus a sum of money equal to forty cents per day for the time of such commitment, to be placed in the hands of the superintendent of such workhouse, for the care and maintenance of such prisoner."

This section seems, moreover, to be in exact accord with the provisions of law in that behalf made by the municipal code of 1869, 66 O. L. 195, subsections 275 and 280, as modified by 73 O. L. 211.

It was not until the enactment of Sec. 2104 Rev. Stat. (repealed 96 O. L. 96), March 11, 1884, that the policy asserted by the city was given legislative expression, and then only as to a part of the state. Without reviewing in detail here the history of legislation upon this subject, it is enough to say that our examination thereof fails to reveal the fixing by the general assembly of any such definite or continuous policy as the city declares to have been established.

If it be contended that a literal enforcement of Rev. Stat. 2099 (Lan. 3430; B. 1536-369) would saddle the city with the expense of maintaining some prisoners convicted by its own police court or before justices of the peace elected and sitting within its boundaries of state offenses committed outside its corporate limits, it may be answered that such tribunals are presumed to be clothed with and to exercise their

extra-municipal jurisdiction for the benefit of the community within and for which they act; just as similar tribunals in outlying townships of the same county may in certain like cases, and with equal propriety charge their own communities in respect of offenses committed in such city. Concerning the possibility of a trifling over-lapping of benefits or expenses as between the taxpayers of a city and the taxpayers of outlying municipalities and townships in the same county, the maxim *de minimis non curat lex* is peculiarly applicable.

We have followed the interesting discussion in the city solicitor's brief of the statutes permitting contracts to be made for the maintenance of prisoners from foreign counties without perceiving that they involve any irreconcilable conflict with our construction of the laws applicable to the subject more immediately before us.

The judgment of the court below having followed the principles thus defined, is affirmed.

**Winch** and **Marvin, JJ.,** concur.